## STATE, LEWIS C. WELLER ET AL., PROSECUTORS, v. GEORGE F. SNOVER.

1. The state has the right, by legislation, to protect fish in rivers and streams not navigable.
2. A fish warden for a county, appointed by the governor, under the act of 1871, (*Rev.*, *p*. 433, ¿ 3,) has the right to enter on lands and destroy a fish-basket, constructed in violation of the statute, and the materials of which it is composed, so that it may not be again used; and such materials are forfeited to the state.

---

On *certiorari* to the Court of Common Pleas of Warren county.

Argued at February Term, 1880, before Justices DEPUE and SCUDDER.

For the prosecutors, *Shipman & Son.*

For the defendant, *Henry S. Harris.*

The opinion of the court was delivered by

SCUDDER, J.    The prosecutors, Lewis C. Weller, John Smith, William Wiley, Peter Brugler, and Hampton P. Gardner, were sued in the court for the trial of small causes, for entering on the lands of the plaintiff, George F. Snover, and breaking up and destroying a fish-basket, erected or placed in or along the Paulius Kill, a stream tributary to the Delaware river, near Columbia, and above tide-water. A dam was erected in the bed of the main stream, or kill, which caused it to overflow its bank and run, for a short distance, through the land of the plaintiff, returning into the

main stream. On this diverted stream, the fish-basket in question was erected. On October 12th, 1875, soon after its erection, the defendant, Lewis C. Weller, fish warden for the county of Warren, entered on the lands of the plaintiff, and, by his direction, the other defendants tore out, broke, and destroyed the basket, cutting up the materials of which it was composed. The principal defendant justified his act as a public officer performing his duty, under the act to regulate the fisheries in the river Delaware, and for other purposes, and the supplements thereto. *Rev., p.* 426.

The supplement of March 15th, 1871, (*Rev., p.* 433, § 3,) provides for the appointment, by the governor of the state, of a fish warden in each county adjoining the river Delaware, whose duty it shall be, on view or information, to enforce the fishing laws within their respective counties. They are authorized to visit any dam, weir, fish-basket, brush-net, or other apparatus for taking fish, for the purpose of removing the same, as therein provided. The act further provides (§ 41), that it shall be the duty of the fish warden to remove from the river Delaware, wheresoever the same may be found, all such weirs, racks, fish-baskets, fishing dams, or pounds, or any seine, brush-dam, or other device, anchored, staked, or fastened, for the purpose of taking fish in the said river, and all boats, lines, implements, and materials used in violation of this act, shall be forfeited to the state, and all such weirs, racks, baskets, dams, or pounds may be destroyed, and rendered incapable of taking fish.

Section 2 of the act of February 28th, 1872, among other things, provides that the fish wardens shall first give notice, in two newspapers of their respective counties, that said contrivances are known to exist, and are declared common nuisances, ordering them to be dismantled by their owners or managers, so as to render them no longer capable of taking or injuring the fishes of the streams, of whatever kind; and if, at the expiration of ten days from the date of said notice, the dismantling shall not have taken place, then the said fish.

wardens, or others, shall proceed to remove, or destroy, or dismantle the said obstructions, as hereinbefore directed.

By the supplement of April 4th, 1873, (§ 1), the original act and supplements were extended, and applied to the Delaware river and bay, and their tributaries within the jurisdiction of this state.

In the court for the trial of small causes, a judgment was given in favor of the plaintiff, for $35 damages, and costs. On appeal to the Court of Common Pleas, this judgment was reversed, and a judgment given in favor of the plaintiffs and against the defendants, for $10 damages, "*for the destruction of the material of which the basket was composed.*"

The defendants do not justify by the abatement of a nuisance at common law, but under the statute, and the question presented, on the facts as stated, is simply one of statutory construction.

By the concessions and agreements of the proprietors, freeholders, and inhabitants of the province of West Jersey, dated March 3d, 1676, (*Leaming & Spicer* 390, *ch. VI.*,) all the inhabitants of West Jersey were granted the liberty of fishing in Delaware river. Such liberty was afterwards restrained, when the abuses which it occasioned became apparent. Our first statute to regulate fisheries in the river Delaware, passed November 26th, 1808, has been followed by supplements down to the present time, from time to time, as the need for particular provisions was manifested. The great interest of the general government, and of the government of our state, in protecting fisheries, in stocking them with fish, in guarding them as a supply of food for our people, and in fostering the raising of game fish, has been manifested by frequent legislation and appropriations for these purposes. The right of the state thus to legislate cannot be disputed. It was passed upon without question, in *Shoemaker* v. *State, Spenc.* 153, and in other cases in our courts.

Chief Justice Parker, in *Commonwealth* v. *Chapin,* 5 *Pick.* 199, says: "The common law right of several fishery in the owners of lands bordering on rivers not navigable, is

subject to a reasonable qualification, in order to protect the rights of others, who, in virtue of owning the soil, have the same right, but might lose all advantage from it, if their neighbors below them, on a stream or river, might, with impunity, wholly impede the passage of fish into the lakes, or ponds where they, by instinct, prepare for the multiplication of the species. This restriction is founded upon that universal principle of every just code of laws, "*Sic utere tuo, ut alienum non lœdas.*"

Chief Justice Shaw says: "It seems to be well settled that the obstruction of the passage of the annual migratory fish through the waters and streams of the commonwealth, is not an indictable offence at common law; but the right to have these fish pass up rivers and streams, to the head waters thereof, is a public right, and subject to regulation by the legislature." *Commonwealth* v. *Essex Co.*, 13 *Gray* 247; *Holyoke Co.* v. *Lyman*, 15 *Wall.* 500.

The penalties imposed by such legislation have been by indictment, fines, imprisonment, and the forfeiture and destruction of articles used in effecting the injury. Our statutes concerning fisheries, game, clams, and oysters, furnish illustrations of the kinds of preventive punishments which have been sanctioned by our laws, and cases of their imposition will be found in our reports, even to the extent of the seizure of the property of non-residents, when caught *flagrante delicto*. *Haney* v. *Compton*, 7 *Vroom* 507.

The question whether the destruction of private property for public purposes, is a taking for public use, within the meaning of the constitutional prohibition of such taking without compensation, has been elaborately discussed in *American Print Works* v. *Lawrence*, 1 *Zab.* 248; *Hale* v. *Lawrence, Id.* 714; *S. C.*, 3 *Zab.* 590, in cases where buildings were destroyed by public officers, to prevent the spread of a conflagration.

In *Wynebruner* v. *People*, 13 *N. Y.* 378, the provisions of the act to prevent intemperance, or the prohibitory liquor law, authorizing the destruction of intoxicating liquors owned and possessed by persons within the state, in a summary way,

was held unconstitutional in its application to liquors owned and possessed before the act took effect, but not to those acquired afterwards. This distinction was stated and followed in *Phelps* v. *Racey*, 60 *N. Y.* 10, in the enforcement of the statute prohibiting any one from having in possession game-birds, of the kinds specified, after a certain time, where the birds were acquired subsequent to the passage of the act, and with the presumed knowledge of its provisions and conditions. The court say that, in like circumstances, the legislature may pass many laws, the effect of which may be to impair, or even destroy the right of property. As a deduction from the references already made, in their application to the present case, it may be said that, after a statute has declared an invasion of a public right to be a nu'sance, which may be abated by the destruction of the object used to effect it, the person who, with actual or constructive notice of the law, sets up such nuisance, cannot sue the officer whose duty it has been made, by statute, to execute its provisions.

The defendant, Lewis C. Weller, as fish warden, destroyed the fish-basket of the plaintiff, and cut up the material used in its construction. Was he authorized, in so doing, by the statute?

Section 4 of the act of March 15th, 1871, says he may remove the basket; that all materials used in violation of the act shall be forfeited to the state, and that all baskets may be destroyed and rendered incapable of taking fish. It is said that the authority to remove and destroy the basket, and to render it incapable of taking fish, does not warrant the cutting up and destruction of the materials of which it is composed. This was the view taken in the court below, applying the strictest construction to this police regulation and power. I think the destruction of the fish-basket does not call for any very nice care in preserving the materials of which it is composed. In the case of the American Print Works *v.* Lawrence, above cited, a question was raised whether the destruction of the building to prevent the spread of fire, authorized the blowing up of the goods contained within it, but not whether

they were authorized to blow up the materials of which the building was composed.

But if it be conceded that to destroy the fish-basket will not warrant the destruction of its materials, in what way is the plaintiff entitled to the remedy he seeks? It must be admitted that his fish-basket was in the stream, in clear violation of the law, and if so, by Section 4 it was forfeited to the state. If forfeited, it was lost to him when seized, and he cannot be injured by its destruction. If the officer had no right to break it up, he will be answerable to the state, and not to the plaintiff.

We have not considered the sufficiency of the notices required under Section 2 of the act of February 28th, 1872, because no copies of the notices are printed with the state of case presented to the court. The court below seemed to think they were too general, and doubted the effect of the act repealing the requirement for such notice, passed March 27th, 1874, to take effect when concurred in by the legislature of Pennsylvania, but did not put its judgment on these grounds, but for the destruction of the material of which the basket was composed. Neither have we attempted to construe the act of April 13th, 1876, (*Rev.*, *p.* 456,) entitled "An act for the preservation of fish," because it was passed subsequent to the act complained of in this suit.

The judgment should be reversed, with costs.